Good afternoon. Illinois Appellate Court, First District Court is now in session. The Honorable Justice Michael Hyman presiding. Case number 1-9-2-1-5-9. Matthew Hirst versus Fanatics. Good afternoon. First, let me begin. I apologize that we're beginning a little late. It was not our fault, the three of us. The justices from another panel ran late, which they do from time to time, and we cannot order them to shut down at one o'clock. So I do apologize. We do like to run on time. With that in mind, let me introduce Justice Daniel Pierce and Justice Mary Ann Good afternoon, Your Honors. My name is Matthew Hirst. And you represent the appellant. I am one of the relators and one of the attorneys for the appellants. Okay, thank you. My name is Frank Biestrab, and I represent the Attorney General. Thank you. Good afternoon, Your Honors. My name is Gail Morse, and I represent Appellate Fanatics, Inc. Thank you. Each side has 20 minutes. Mr. Hirst, how long of that 20 minutes do you want to reserve for rebuttal? Five minutes, please. Okay. And Ms. Morse, are you going to say anything or not? Your brief was quite short. And my comments will be as short as my brief. The state has been gracious enough to give us three minutes of time, and the purpose for me to is to add an abundance of caution. And yeah, so it'll be very short. Okay. Which of the two of you is going to go first? I'll be going first. Okay. All right. And then I'll cut off at 17 minutes if I'm still going. Okay. And either side, if you go a little long, as long as we're asking questions and we're getting new information, that's probably why the other panel ran long, I'm hoping. So we won't cut you off. We do operate like we are in court. We will ask questions in the middle of some of your statements. And please finish your thought. And then if you would answer the question, we'd appreciate it. So, Mr. Hirst, you may proceed. Thank you, Your Honor. May it please the court. In 2017, relators alerted the state of a significant and systematic under-collection of sales taxes by Fanatics by way of a detailed false claim. Let's stop right there. You said alerted the state. Yes. The state already knew they had started an audit, hadn't they? They had started an audit, Your Honor, but they had no knowledge of underpayment. There has been no contention, no rebuttal to our arguments or positions that the state had any knowledge at the time that initiated the audit, which was two days before we disclosed that Fanatics had engaged in any under-collection. But they had already begun the audit. And your argument is it doesn't matter. Is that right? That is correct, Your Honor. Would it matter? Is there any circumstances? I mean, if we come out with a case, we'll say it never matters when a state may begin an audit as long as somebody is sometime during the audit files a tam action, that's fine. I think that this goes back to your decision in Lindblom, Your Honor, where you held an audit for investigations. Investigations in and of themselves do not assert a claim seeking a remedy. That was the Sixth Circuit's decision from Bledsoe, which allowed the relator to partake in an alternate remedy, despite the fact that the government was already engaging in an investigation of the defendant. It's also Riley from the East Circuit held the same thing. After allowing the relators to litigate the issue with Fanatics for nearly two years, the state moved to dismiss relator's complaint. It argued that some 21 months after relators had filed their valid complaint, and while it was still on file, the state had settled the under-collection issue with Fanatics through IDOR. In fact, in moving to dismiss, the Attorney General stated, quote, because defendants have already resolved their tax liability, there is no liability to address in this case. Despite this admission that this was an alternate remedy, the Attorney General convinced the trial court that... Where is the admission of an alternate remedy? That quote doesn't say that they admitted to an alternate remedy. They said that the defendants resolved the tax liability in the audit, that it constitutes an alternate remedy. They said that the audit constitutes an alternate? No, Your Honor, but that is our argument. That's your argument, okay. But they didn't say that. I mean, you're putting words in their mouth. That's what I'm trying to figure out. You're saying that they said it, and now you're saying, well, that's your argument, which is... Well, they said that because the defendants have already resolved their tax liability, and they were referring to the audit in that quote, there is no liability to address in this case. So the audit, from my reading of their brief, concluded any of the underlying liability for the purposes of the false claims of that case, that is the epitome of an alternate remedy. How is this an alternate remedy when the fanatics voluntarily made a substantial payment that was above and beyond what was necessary, as it turned out? Well, there's a couple of different issues with regards to that. The reason that fanatics made that payment was to stop interest in penalties. That's at A99. It was not to resolve liability. It was not to resolve the audit. How do you know that? Well, you say it's not to resolve. How can you say that? On what basis, what evidence in the record can you say that? Because of their email at A99, where they emailed the auditor saying that they would like to make the voluntary payment to stop interest in penalties, Your Honor. So they have that right. Yes, but it still didn't resolve the liability because the audit continued for another 14 months afterwards. But that raises an interesting point, which is that the audit was a prepayment under the rules applicable to such payments. They could have filed a form known as an ST-6 and requested that money back at any time prior to signing the notice to propose liability, which didn't occur until January of 2019. And even if that's the case, even if that payment would count as potentially a remedy, it is an alternate remedy to our suit, which was achieved after the state had declined intervention while we had a complaint on file. So I think that either way, it supports the relator's case. The trial court error. This appeal involves two main issues, both involving the interpretation of the False Claims Act regarding whether relators are entitled to a percentage of the recovery from the state settlement under the alternate provision of the act. The first issue concerns the timing of the complaint. The state argues that relator's complaint was too late to entitle relators to a percentage of the recovery. But it's undisputed that one, the state knew nothing about the undercollection prior to the relators coming forward. And two, the mailing of the notice was not an assertion of a claim or seeking a remedy. In other words, the notice of routine audit was at the beginning of an investigation, not a claim of undercollection. You're saying routine audit though, counsel. That's your word. Nobody is admitting that it's just a routine audit. It was the defendant's one as well. And this was another one of the series of fanatics that the IDOR had done. I mean, what makes an audit routine as opposed to non-routine? I would say that the difference lies with whether or not there is any knowledge or suspicion that there is undercollection. If there's no suspicion, it is routine. It is an attempt, as IDOR states, to verify the taxpayer information. And what are you basing that argument on? PIO 60, which is IDOR's own document stating that the purpose of the audit and the audit that was attached to the notice of audit initiation is to verify taxpayer information. It also states that it recognizes overpayments and errors on behalf of IDOR. So the taxpayer in an audit could also get money back. So that, I think, is the difference distinction that we're drawing between a routine audit, which is just merely an investigation, and something different. Something may be done with intent or knowledge where there is a pursuit there. Mr. Hirst, let me ask you this. You filed your complaint. Let's say you filed your complaint on Wednesday. Is it my understanding that the audit notice went out on Monday? Yes, Your Honor. It was mailed on Monday. Mailed on Monday. You filed your complaint under seal on Wednesday, correct? We disclosed to the state both the complaint and our evidence two days later. The complaint was filed a week after that. I just want to be clear. Okay. At any point during the litigation, did the state contend that or not that the audit was as a result of your filing of the complaint? Or did they always contend, and when did they contend, that it was initiated independently? There was no real contentions by the state about the nature of the audit in the litigation. I beg your pardon. The audit notice, we were told about the audit initially by the defendants after the defendants appeared, to answer your question. And was it ever discussed with the state that, hey, you have an audit going on that deals with the same subject matter of our complaint? How did that come about? We had many discussions with the attorney general about the case and about, they were not disclosing any information about the audit because the audit is generally considered to be confidential. At no point did the attorney general move to dismiss our case, even though audit was ongoing, despite having the opportunity to. They declined to intervene. They allowed us to prosecute this case for 21 months afterwards, before they finally decided to try to dismiss the complaint, which was after they had resolved it in the audit. Didn't they reserve the right throughout that period of time to dismiss? Well, the state always reserves the right to audit. Specifically here, there was throughout the litigation, the state was always reminding you that they reserved that opportunity. They never said that just because you're ongoing, that they weren't going to move to dismiss it. No, I cannot recall any specific instance of reservation. We were always aware that under the existing case law, the attorney general could dismiss it. But I think that we need to separate dismissal from alternate remedy, because the attorney general does have the power to dismiss this. We acknowledge that in the statute and is discretionary, but we're not talking about his power to dismiss it. But the power to dismiss here was done in good faith, in which you're not contesting. We're not challenging that. You're not challenging it, so you're not contesting it. So that's a fact. Yes, Your Honor. Okay. Did you ever come up in discussion that, hey, we're doing all this work on this case, we expect to get paid? Did you ever ask for any assurances from the state that you'd be going on a apparently a parallel track? No, Your Honor. I don't think that I'm not certain that the state could have given us assurances. And we provided to the state all the materials that were turned over in discovery. These included thousands of pages of emails. We gave briefs and memos to the attorney general. They were fully apprised of what was going on in our case, but it was a one way street because we weren't getting information back about what was going on in the audit. And you were never advised by them or suggested from them that you back off or you guys aren't going to get paid for your efforts? Of course, this is outside the record, but I will say that it was quite to the contrary. Well, why would it be in the record to support your claim that, you know, they're acting in bad faith or some variant of that? Again, bad faith. Bad example or something. Right. Bad faith would only be if we were challenging the attorney general's dismissal of the complaint. We don't challenge that because even the alternate remedy provision anticipates that the case will be dismissed by the state. That's why it says that the relator's rights are preserved as if the case continued. It assumes that the attorney general will dismiss once the alternate remedy is achieved, which is exactly what happened here. Okay. The second issue concerns the sufficiency or validity of the relator's complaint. The state argues that relator's complaint was not valid because the state determined the fanatical act of the requisite C enter under the IFCA. But the state's internal opinion is not relevant to the analysis. Instead, when analyzing whether a relator had a valid complaint on file at the time that the alternate remedy was achieved, the courts look to whether a complaint raises the possibility of recovery. Here, the relators had an unchallenged complaint on file that met the pleadings requirement and was not disqualified by any of the jurisdictional bars. Well, with regard to, again, you keep using the word alternative remedy, I understand why. The way I read the statute is that alternative remedy involves a proceeding. Do you agree or disagree? The statute does say proceeding, but I would like to point out that proceeding does not necessarily need to be anything formal. Several cases have held this to settlement agreements which were not done in any formal context whatsoever. That would be, forgive me a moment, if you don't mind if I check my notes. That would be, forgive me, it doesn't need to be a formal proceeding. It would be in pharmaceutical wholesale litigation would be one of those. RILA would be another one. Formal or informal proceeding. What we have here is not a proceeding. We have an audit. Yes. It's not a proceeding. Correct. But just as in Berejas, or excuse me, Bledsoe, all that was going on was an investigation. An investigation is not a proceeding in the same context that an audit is in the same context. But it was an audit from the beginning to the end. And in fact, that they voluntarily paid into the state monies before they even sent out the notice of proposed liability. So quite several months before. Yes. But as I mentioned, this was not a resolution of the issues of the case. If it's still an issue, then again, that was after we had filed our complaint and after the Attorney General declined to intervene, which is really what's required for an alternate remedy. And I understand you're thinking about proceeding. If the state had just settled this claim, that wouldn't be in a proceeding because they declined to intervene. There would be no reason, and the case law actually supports us on this, to deny relators a portion of that settlement because that's considered to be an alternate remedy. And so we do not, the courts have interpreted this to be, the proceeding to be very broad. And as Berejas pointed out, it is any alternate remedy. It is anything. And they have used that to apply this to disbarment proceedings, audits, settlements, and a host of other both formal and non-formal proceedings. I'd like to start with the timing of the complaint. We don't have to follow that case, which is a 2001 federal case. Yes, Your Honor. Although this court, since the alternate remedy provision and most of the Illinois False Claims Act follows the Federal False Claims Act, we have repeatedly looked to the federal courts for help and guidance in these issues. I'd like to turn to the timing of the complaint. This case hinges on the construction of the alternate remedy provision. The IFCA, like its federal counterpart, strikes a bargain. In exchange for information from individuals, the government agrees to reward them with a percentage of the recovery. This reward is what makes the statute work. Without it, no relators would come forward. Recognizing this and that the government has many options at its disposal to resolve these issues, the alternate remedy provision was included in the act. It is designed to protect relators in situations just like this one. Why would it protect in this one? Again, because of the timing. I mean, the state was already on top of it. So, having done it in the process of an audit, you aren't bringing anything new to the state, are you? We are bringing it. At the time that the audit was initiated, the state had no information, much less the information that we provided them, that Fanatics was under collecting sales taxes. Well, no, that's not the end of the story. In fact, looking at the documents from Fanatics, the documents indicate that they discovered their computer system had been in error. I mean, this was not something done fraudulently. They said that they were under collecting as a result of some computer system that had undergone some changes, and they discovered that. Yes, but the reason why that computer system was under collecting is the proof of CNTR. The emails... Nobody discussed it. I mean, no CNTR has been determined, correct? No CNTR has been determined, no. So, we don't know that. And so, we don't know if you even brought a case. Without CNTR, there is no case. But the standard, and I was going to get to this later, the standard is not looking at whether or not we can prove CNTR. The standard under Bledsoe is whether the complaint raises the possibility. Do we meet the pleading standards, and are we barred by any of the jurisdictional bars? The latter is not applicable. The former... The complaint has never been challenged. The complaint has been held to be sufficient. Neither the state nor the defendants ever challenged it. What they're challenging is what was produced in discovery. But that's not what the courts look at, because the courts from Reiling from the Eighth Circuit and Bledsoe again from the Sixth Circuit, they look at the allegations in the complaint to see if it overlaps. So, the act provides that the state may elect to pursue its claim through any alternate remedy available to it. Thus, for the timing analysis, the state must have asserted a claim seeking a remedy prior to the filing of the complaint for the relator to be barred. That did not happen here. Here, the routine audit did not assert a claim, much less seek a remedy. As this court held, a claim is, quote, a demand for something due or believed to be due, unquote. A remedy seeks to uncover that claim or recover that claim. It is impossible to assert a claim or seek a remedy when you don't know, as the state was here, that you've been wronged. And I'd like, you know, as I was mentioning earlier, an audit by IDOR's own description verifies the taxpayer's information and, quote, acknowledges tax overpayments and underpayments as well as any errors. Even the state, when it was describing this audited issue here in the proceedings below, admitted that the purpose was to, quote, determine potential underreported tax liability, if any. In other words, IDOR was merely investigating the possibility that fanatics undercollected taxes. So a routine audit like this one, let me, allow me to move on. In addition, the routine audit here was at best an investigation under this court's decision in Lindblom v. Sears, that's the 2018 case, that held that audits were an administrative process, not an administrative proceeding. Unlike Lindblom, where prior to the file, the complaint being filed, IDOR had issued a notice of proposed liability and the matter was pending before the informal conference board. Here, the notice of audit initiation was only an announcement of a routine investigation. The auditor had not done any actual investigation because fanatics did not even acknowledge receipt of the notice until after the complaint was filed. But the audit began in January.  Correct. So, I mean, again, several months before you can come in and see. They were already on top of it. They were, they weren't on top of it, your honor. They had no knowledge of any underpayment. And the purpose of the FCA is to bring forward information that the government is unaware of. And that's exactly what we did here. So, an investigation. Is there an exception that a acquittal proceeding must have been in existence at the time of the government's election of an alternative remedy? Yes, there is. We believe that that requires the government to assert a claim and seek a remedy. If we look at cases like Babayola from the Fifth Circuit, what kicked off, what was used as a cutoff was when the government obtained an indictment against the defendants. Keep in mind that in that case, they must have been investigating prior to that because an indictment does not spring without an investigation prior to that. But the court didn't really look at the investigation period. It looked at the point of where the indictment had been obtained. And that kicked off a process of where the government was seeking through that indictment restitution. Here, the government was simply announcing its intent to investigate and verify the taxpayer information from fanatics. An investigation is not an election of remedy. Again, the Sixth Circuit in Bledsoe allowed the relator to pursue his claim on the alternate remedy, even though the government was actively investigating the defendant at the time of the filing. The Eighth Circuit and Riley came to the same conclusion. And that's because an investigation, as this court held in Farner, is one that, quote, previously unknown to the investigative body, which may or may not provide grounds for further action, unquote. Until the investigation is complete and a decision is made to take further action, an investigation does not assert a claim or seek a remedy. It's only at the conclusion of the audit, when the auditor issues the notice of proposed liability, that the audit first asserts a claim. If it is settled by the taxpayer accepting the proposed liability, that would be the remedy. If not, it does not seek a remedy until the final determination is issued by IDOR, which can then be entered as a judgment. The attorney general's argument would be at odds with your decision in Lindblom. There, this court rejected the argument that an audit could be construed as one step in a continuous process for the purposes of the government action bar. Yet that is exactly the same position that is being asserted by the state now with respect to the alternate remedy provision. For the same reason, Lindblom rejected the argument that an audit might result in litigation and be subject to the government action bar. It similarly should reject the argument that an audit might result in a claim seeking a remedy. I'd like to turn now to the sufficiency and the validity of the complaint. But does any of the judges have any more questions? No. If you could just, because you've gone over your time quite a bit, we'll give you a few more minutes. Go ahead. My apologies. No, it's not your fault. The Sixth Circuit in its 2000 Bledsoe decision, to be eligible for an alternate remedy, the relators must have, quote, offered a complaint which offers the possibility of ultimate relief recovering damages. That's what we did here. We met the pleading standards. We were not disqualified by any of the bars. And I'd like to point out that the sole authority relied on by the attorney general is the Third Circuit's decision in Hefner. But it just simply doesn't support this argument, because in that case, at the time of the recovery, judgment had been entered against the relator. He had no complaint on file at that point that raised the possibility of recovery. That's in stark contrast to our unchallenged complaint, which was on file at the time of the recovery here. I will reserve the rest of my time. I thank you for your attention. Thank you. May it please the court. My name is Frank Bieschoff, and I represent the attorney general. This court should affirm the dismissal of Relator's Key Tom action and the denial of their request for a portion of Fanatic's tax payment because the state did not choose to pursue an alternate remedy by completing an audit that was initiated before this action had begun. Under the Act, a private party known as a Relator may- Let me ask you one of the comments that was just made by Mr. Hearst. If we follow Lindblom, do we have to reverse? No, Your Honor, and for a couple of reasons. First of all, Lindblom was talking about the government action bar, which is a different provision in the False Claims Act other than, which is different from the alternate remedy provision. The alternate remedy provision is Section 4C5. The government bar provision is 4E3, and those provisions are written in very different ways. 4E3 is written with limiting language that suggests that the provision should be read narrowly, which is what this court did in Lindblom, whereas 4C5 is written in a broad language that encompasses a larger array of different proceedings. Specifically, in the Lindblom decision, the court relied on the part of 4E3 that said- that included both- it defined the relevant proceeding as a civil suit or an administrative civil money penalty. So that provision restricted the number of relevant proceedings to those two, and this that was akin to a judicial proceeding would satisfy the government bar. The alternate remedy provision, by contrast, says that the state may elect to pursue its claim through any alternate remedy, including any administrative proceeding, to determine the civil money penalty. So that's just simply one example of a number of proceedings that could qualify as an alternate as it does as 4E3. The state doesn't think that it should, but the result would actually end up being the same, because under Lindblom, the audit- not only was the audit not considered an administrative proceeding to determine a civil money penalty, but neither was the board's review. So here, the case- here, the state obtained relief through the remedy- or through the audit, excuse me, and the ultimate notice of proposed liability, but under Lindblom, neither of those would constitute an administrative proceeding to determine a civil money penalty. So in that case, there would be no alternate remedy, but we're not- Would this case just be decided upon the issue of whether the audit is a remedy? Yes. If it is a remedy, they win. If it is not a remedy, you win. No, not quite, Your Honor. We agree with the- it's the state's position that if the facts were different, an audit can be an alternate remedy. So if, for example, relators had filed their complaint before the state had initiated the audit, then the audit would constitute an alternate remedy, because that is the proceeding by which the state pursued relief. What relators are arguing is that you shouldn't look at the audit, or at least I think this is what they're arguing in their briefs, is that you shouldn't look at the audit. You should look only at the notice of proposed liability, because if the state actually pursued relief through the audit, which it did, then it's not an alternate remedy, because the timing is determinative. There's no alternate. I mean, it already was proceeding in some sense. Exactly. The proceeding had already begun. It had been initiated, and that's the point that, in time, that the statute directs courts to look at, because it says- because it talks about when the state elects to pursue a remedy. So it's the moment when the state determines what kind of proceeding it's going to pursue. So to go back to Justice Pierce's question, it boils down to the fact that basically you're saying they were two days late. Well, we would say they're two months late, because we- Two months was when they assigned the audit. So you're saying it's the date of the assignment of the audit, rather than when the audit notice goes out? Yes. I would make two points on that, Your Honor. The first is that it is the point where the state decides to pursue a remedy. So that would be in January, when it decided we're going to initiate an audit. But also, it's not like nothing had happened during those two months. The reason why the notice of the audit didn't go out is because the auditor was having trouble getting in contact with Fanatics, and they had attempted to call them a number of times, and then they mailed it to them. So things were already underway. And so for purposes of the alternate remedy provision, which is to be read broadly, the statutory language is quite broad. The federal cases that have interpreted it have agreed. Let me sum up what you're saying, just to make sure I understand it. What you're saying is, it's a state's position that an audit may be an alternative remedy, but it is not an alternative remedy when the state has already initiated an audit. However, that might be done with a traditional audit or whatever. Once that's started, then it is not within the confines of alternative remedy. Yes, Your Honor. That's our position. And that's the most straightforward decision of this case, is to look at when the alternate remedy was, when the state elected its alternate remedy, and here it is the audit. But against that argument, the relators really make, relators point this court to the notice of proposed liability, and saying that's when the state elected its alternate remedy. But the notice of proposed liability was not an alternate remedy, because it is simply a part of the audit, and it cannot be separated from that proceeding. Under the governing administrative rules, the Department of Revenue shall issue a written notice to the taxpayer when the audit results in a liability finding. So here, the notice was just the next step in the ongoing audit. It was not the initiation of a separate action or a separate proceeding. In other words- Is the settlement also part of that same proceeding? Well, there was no settlement here, Your Honor. So upon the notice of proposed liability, it's really akin to a judgment by a court. The department says, this is what we've determined what your liability is, and then at that point, the audited party has the option to pay or to challenge that decision through a review proceeding. So they're in the same position that a litigant is when a judgment is entered against them. They can comply with the judgment, or they can challenge it through an appellate proceeding. So it's much more like a judgment than a complaint, which is what relators are trying to compare it to. And so here, the department did not choose to issue the notice as an alternative to participating in the HETOM action. It was simply taking the next step in a process that was already underway, and then it ended shortly thereafter because Fanatics chose not to challenge that decision, consistent with their decision earlier to pay that amount of underpaid taxes to the state. But in the meantime, the lawyers are, if we look at just the record, they're continuing to litigate this for months. I mean, from the beginning until that point, I mean, they've been working, and they've been providing information to the state. It's a one-way street, they said. Is that how we should be interpreting this act? Isn't the act to be interpreted broadly in order to encourage these types of actions? Well, the act does encourage these types of actions. I mean, the risk and possibility that the state will end up dismissing an action is always present in the HETOM action. So that's just a risk that's always there. And to the extent there's concerns about the state in a particular case acting in bad faith, that's what you have a hearing for, where the court does come in and review the evidence to see if there's evidence of fraud or bad faith by the state. And here, the court found there was no fraud or bad faith by the state. And as Relators of Ari said, they are not challenging that decision in this case. So to the extent that this court is concerned that there might be situations where there's an unfairness because the state is monkeying around with the timelines or something like that in order to try to avoid paying a portion of a recovery to the Relators, there's already a mechanism in the act and in the act's proceedings to protect against that, which is the bad faith finding, in which case the court can decline to dismiss the action and then can order relief. And was that done in this case? Yes, there was a hearing. And at that hearing, the court found that there was no glaring evidence of bad faith or fraud by the state. And the court said that in its order, which both dismissed the Keatom action and denied Relators' motion for a portion of the tax payment. But was a motion for a portion of the tax payment made as part of an argument that the not under the theory, or did they present an alternate theory of, and if you don't give it to us under the provisions of the Keatom Act, then you should give it to us under the alternate remedy provisions. So after the state filed its motion to dismiss, Relators filed a combined response to the motion to dismiss and cross motion for a portion of the alternate remedy, or for a portion of the tax payment as an alternate remedy. And I believe in that document, they argued that the court shouldn't dismiss the action until they award a portion of the recovery to Relators. And I believe in one of the filings, either the motion or their reply, Relators may have also argued that the state had acted in bad faith by moving to dismiss because it was only for the reason to deny them recovery. But all of that was before the circuit court at the hearing, and the court found there was no bad faith, and they are not challenging that finding on appeal. And so with regard to the alternate remedy provision, I would just like to direct the court's attention really quickly to the statutory text, because one of Relators' arguments is that you shouldn't look at the audit, you should only look at the notice of proposed liability because a remedy, the alternate remedy essentially refers only to the relief required at the end of a proceeding rather than the proceeding itself. Section 4C5 refers to an alternate remedy as a proceeding four times over three sentences. It states that, quote, the state may elect to pursue its claim through any alternate remedy available to the state, including any administrative proceeding. It then goes on over the next two sentences to say that if any alternate remedy, quote, is pursued in another proceeding, the person initiating the ketam action shall have the same rights, quote, in such proceeding as they would have had if the action had continued under the act, and that any finding of fact or conclusion of law made, quote, in such other proceeding has become final shall be conclusive on all parties. So it's clear from the statutory language that the alternate remedy refers to the proceeding by which the state pursues relief. That's consistent with the case law as demonstrated on page 17 of the state's brief where federal courts have interpreted the alternate remedy to refer to proceedings by which the state pursues relief. To that end, those courts have said that the state elects an alternate remedy when it chooses between two proceedings, and that conclusion makes sense because otherwise the state could be said to have elected an alternate remedy simply by not terminating or dismissing a matter how far along it was at the time that the complaint was filed. So all of that points in the same direction, that the alternate remedy is the proceeding by which the state pursues relief. Here was the audit, and you can't separate the notice of proposed liability from the audit. Relators' other main argument is that the audit shouldn't be considered an alternate remedy because it's essentially just an investigation. But unlike a simple investigation, an audit is a formalized proceeding with definitive steps, including a beginning and an end that confers rights and obligations on the taxpayer being audited. Indeed, the department provides the taxpayer with notice when the audit has been initiated that advises the taxpayer of the scope of the audit, what documents it must produce for examination, its schedule, future proceedings. And during that proceeding, the taxpayer is entitled to representation, and then they may contest the results through additional proceedings. And during the audit process, the department may subpoena different documents. So an audit is much more than just sort of an informal investigation. It's a formal proceeding by which the state pursues relief, at the end of which it issues a notice of proposed liability, which the audited party can choose to challenge as they would any other judgment. What's the policy behind allowing the relators to continue on in their endeavors at time and expense, clearly, when the state can dismiss the key TAM action at any time and pursue their own remedies? I mean, what's the policy decision there to allow that to happen? Because it just on its face, it seems like it's subject to abuse, and it's unfair to the relators. Right. So two points, your honor. First is that, I mean, dismissal is a harsh remedy. If the state moves to dismiss, then that ends the key TAM action. And here, when there's an audit ongoing, it's reasonable for the state to not take that harsh step, that final step, until it's had a chance to review everything that comes out during the audit. It's had an opportunity to weigh its options. And the statute, again, does not require the state to make its decision to dismiss at any point in time. And as I believe Justice Hyman pointed out, the state makes it clear to the relator and all parties throughout the litigation that the state is the actual party in interest. And because of that, there's a constitutional imperative that the attorney general have the sole authority to dismiss at any point if it chooses. And so, and again, as mentioned earlier, if the state is abusing that power in some way, then you have the ability to review that. Courts have the ability to review that through the hearing about whether or not the state acted in bad faith. So, there already is a mechanism to protect against that. Well, just so I'm clear, the state can dismiss the relator, take control of the litigation themselves, and if they choose, they can bring the relator back in later on, correct? Yes, I believe so, Your Honor. Okay. And the state also has the authority to dismiss the action or settle over the relator's objections. Yeah, no doubt. No question. But they have a lot of options, and one of which seems to me to be up front with the relator as to whether their efforts are going to be recognized financially. Yes, Your Honor, but I do believe here, I mean, I don't believe the relators were unaware that an audit was ongoing, and so... Well, they probably were aware of it, and so was the state. But the state was in a position, it seems to me, of saying, by the way, we have this audit going, it's going famously, and if we recover, you're not going to get a dime from us. What's the reason why you wouldn't be up front on that thing? I mean, you are professionals. Yes, Your Honor, and I'm not aware of specifically what the discussions were between the attorneys at that time. But in any event, there's always that, if the state were to abuse its power in one way or another, there's always the backstop of court reviews to see whether the state acted in bad faith. Here, the court found that the state did not, and relators are not challenging that. And so... Are there any other questions from the justices? Right, I'm about to run out of time. We'll put that on... Finish up, please. Okay, yes. Simply, we would rest on our briefs as to the other issues that we raised, and we would simply ask this court to affirm the circuit court's decision. Thank you. Ms. Morris? Afternoon, Your Honors, if they please the court. I'm here to make just out of an abundance of caution, and to make the simple argument we made in our brief that has been stated many, many times throughout the arguments today, the case has been dismissed as to fanatics, and has not been challenged. And so that dismissal is final. And so we don't think that there's any additional liability that can be had against fanatics, and we would just like the court to recognize that and hopefully include that in whatever decision is made in the dispute between the state and the relators. And I'm also standing here today, or sitting and virtually standing, to be able to answer any sort of factual questions that you might have that maybe hasn't already been answered. So if there's something that I can help factually, I'm here to make that point. And one final just, I don't know if I get a point of privilege or not, but from the taxpayers' perspective, having to fight an audit and a false claims act is a two-fronted and it was not unsaid by at least me many times during the course of this litigation. And all of the discovery that was provided in the course of the litigation was shared directly with the state. So if the justices have no questions, that was all I meant to say. Any questions? No.  Thank you, Your Honor. Judge Pierce, you asked the question relating to why they allowed this case to go on. And in response, counsel said that they were weighing their options. That is the epitome of the fact that they have not elected a remedy at the time. They were waiting to see what happened. And that happened after we filed our complaint. It's worth noting that they were not pursuing relief at the moment that they initiated it. There was no notice of, no understanding of any wrongdoing. It's impossible to pursue relief if you don't know what you're seeking relief from. And I'd like to also address, there seems to be a little bit of confusion around the discretion and bad faith of the Attorney General. The Attorney General has discretion to dismiss a case for pretty much any reason subject to bad faith. He does not have, but we're not dealing with that because we acknowledge that he can dismiss our case. As a matter of fact, that is the natural outcome when you have an alternate remedy. It is dismissed after the alternate remedy is achieved. But what we're dealing with here is a shell provision as opposed to the may provision that grants the Attorney General discretion. The shell provision preserves a relator's rights to receive an alternate remedy in this case. And that is- So the question boils down to the same issue we just discussed is, what's alternative? They had an audit. They started an audit. They continue with the audit. They ended with the audit. That's not an alternative. Where's the alternative? Well, they were only investigating at the time. This is not a continuous- It's an audit. It was an audit. They started an audit in January, and it continued, and it had a midpoint and an endpoint. And the endpoint, and it was resolved. So it was one audit. Where's the alternative remedy? Well, as I've- As using the language of the statute, they have to assert a claim and seek a remedy. There was no claim under this court's own jurisprudence. A mere investigation does not constitute a demand for payment or a belief that something is due. They were not seeking a remedy and seeking to get paid back on something that they didn't know about. Mr. Hurst, at the time you filed your complaint, were you aware of the fact that the state had instituted this audit proceeding? Absolutely not. Absolutely not. We hadn't until- Sorry, Your Honor. It's unfair to ask you the hypothetical. Had you been aware of that, would you have filed the complaint? I believe we would have because we had information that the government did not. And that's what the point of this statute- But how did you know what they had? You had no way of knowing what information they did or did not have. Granted. But the purpose is to facilitate information. If it turned out that the government had the information after we turned it over to them, that's potentially a different outcome than if they don't have it. It's better to err in sight of disclosure than it is to retain information and potentially deny the state the opportunity to act on that information. I'd like to just kind of wrap this up by really talking about how our argument about the need to assert a claim and seek a remedy is harmonized with not only the statute but the case law. Um, the logical interpretation of the first sentence is that the relator can file a complaint and share in the remedy as long as the state has not asserted a claim and sought a remedy. Harmonizes cases like Bledsoe and Babayola. In the former, the Sixth Circuit allowed the relator to share in the alternate remedy because the government was only pursuing an investigation. The Fifth Circuit denied it because the government had obtained an indictment that sought restitution. The line is obvious. The government in Bledsoe had yet to assert a claim seeking a remedy while it had in Babayola. And this actually plays into some of the statutory bars that we've been talking about here. The public disclosure bar allows a relator, as long as he's an original source, to bring a false claims action, even if the government already knows about the fraud allegations through its own investigations or audits. That's because the government has yet to assert a claim seeking a remedy. It wants a relator who has knowledge to bring an action. But under the first to file bar, the government action, it prevents a relator from bringing suit when either another relator or the government has already filed an action. In other words, when the government or somebody on its behalf asserts a claim seeking a remedy, the relator cannot bring suit. These two provisions illustrate the line and harmonize the act in its provisions. I'd like to say that in contrast, the Attorney General's provision is ignoring words such as claim in the alternate remedy provision. It substitutes phrases alternate proceeding for alternate remedy. It creates conflicts between cases like Bledsoe and Babayola. And to a certain extent, I think it seeks to undo Lindblom. If there's no further questions, I would ask that this court reverse the trial court on the denial of the finding of alternate remedy and remand for determination of the relator's appropriate share. Thank you very much to all of you. Appreciate your arguments and your briefs were very well done. We'll take the case under advisement and we're adjourned.